UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                         Case No. 14-26774-BKC-EPK

WILLOUGHBY & ASSOCIATES, INC.,                 Chapter 11

      Debtor.
_____/
In re:                                         Case No. 14-26776-BKC-EPK

PENELOPE LATHAM,                               Chapter 11

      Debtor.
_____/


**JOINT FIRST AMENDED PLAN OF REORGANIZATION OF
WILLOUGHBY & ASSOCIATES, INC. AND PENELOPE LATHAM**

**Submitted on September 4, 2015 by:**

ZACH B. SHELOMITH, ESQ.
zshelomith@lslawfirm.net
Florida Bar No. 0122548
LEIDERMAN SHELOMITH, P.A.
Attorneys for the Debtors
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

# ARTICLE I
## SUMMARY

This is the Joint First Amended Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") for Willoughby & Associates, Inc. ("Willoughby") and Penelope Latham ("Latham") (collectively, the "Debtors"), in the cases of *In re Willoughby & Associates, Inc.*, Case No. 14-26774-EPK (the "Willoughby Case") and *In re Penelope Latham*, Case No. 14-26776-BKC-EPK (the "Latham Case").

This Plan provides for 17 classes of secured claims, 4 classes of unsecured priority claims, 1 class of general unsecured claims and 2 classes of equity security holders. General unsecured creditors holding allowed claims will receive distributions aggregating the amount of $20,000.00, which the proponents of this Plan have calculated to be 1.6450 cents on the dollar. This Plan also provides for the payment of administrative claims in full on the Effective Date of this Plan, or upon such other terms as agreed to between the Debtors and the administrative claimant(s), or in the case of holders of secured claims that advanced post-petition escrow payments (if any), upon the terms set forth in Article III below.

All creditors should refer to Articles II through V of this Plan for information regarding the precise treatment of their claim. A First Amended Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# ARTICLE II
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES
## FEES AND PRIORITY TAX CLAIMS

2.01   Unclassified Claims. Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes.

2.02   Administrative Expense Claims. Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or in the case of holders of secured claims that advanced post-petition escrow payments (if any), upon the terms set forth in Article III below. The Administrative Claims Bar Date will be set by separate Court order.

2.03   Priority Tax Claims. Each holder of a priority tax claim will be paid either in full on the Effective Date of this Plan, or over a term of sixty (60) months, as further set forth below.

2.04   United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Specifically, the Debtors will pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), through the date of confirmation of this Plan, within fourteen (14) business days of the entry of an order confirming this Plan. Furthermore, the Debtors (as reorganized) will file with the Court post-confirmation Quarterly Operating Reports and pay the U.S. Trustee the appropriate

sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another Chapter under the U.S. Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.01   Claims and interests shall be treated as follows under this Plan:

**Claims and Interests in the Latham Case:**

| Class | Impairment | Treatment |
|---|---|---|
| Class LA-1 – Unsecured Priority Claim of the Internal Revenue Service (Claim # L1[1])<br><br>**Total priority claim amount: $100.00** | Unimpaired | Class LA-1, the Unsecured Priority Claim of the Internal Revenue Service, in the amount of $100.00, is unimpaired by this Plan.  Latham disputes the validity of the Internal Revenue Service's claim, and unless the claim is amended to reflect the correct amount due, Latham will be filing an Objection to Claim, in order to establish the Internal Revenue Service's entitlement to an allowed unsecured priority claim. The Allowed Claim of the Internal Revenue Service will be paid in full (the full amount of its allowed unsecured priority claim, if any), plus statutory interest, in one lump sum on the Effective Date of this Plan.  Furthermore, future federal income taxes will be paid in the ordinary course. |
| Class LA-2 – Other Priority Claims | Unimpaired | Other than set forth above, no other priority claims have been scheduled by Latham and Latham does not believe that any other priority claims exist.  However, in the event that it is determined by the Court that any additional priority claims do exist, then each holder of a Class LA-2 Priority Claim will be paid in full, over 60 months from the Effective Date, in 20 equal quarterly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter thereafter. |
| Class LA-3A – Secured Claim of CitiMortgage, Inc. (first mortgage on homestead property) (Claim # L9)<br><br>**Total secured claim amount: $510,032.83** | Impaired | Class LA-3A, the Secured Claim of CitiMortgage, Inc. (first mortgage on homestead property), is impaired by this Plan. This claim is secured by the real property located at 713 New York St, West Palm Beach, FL 33401-6601 (the "713 Property"), which is owned by Latham and is Latham's homestead/primary residence.  Latham is behind on the mortgage payments on the 713 Property; however, Latham intends on retaining the 713 Property through a mortgage modification, either through this Court's Mortgage Modification Mediation (MMM) program or through a direct modification application directly with the Claimant. |

---

[1] Claims filed in the Latham Case have been identified by the letter "L", followed by the specific claim number in the Latham Case.  Claims filed in the Willoughby Case have been identified by the letter "W", followed by the specific claim number in the Willoughby Case.

| | | |
|---|---|---|
| | | Accordingly, as to treatment to the Claimant pursuant to this Plan, this claim will be paid pursuant to the note, mortgage and any other loan documents entered into between the Claimant and Latham, and will not be modified or otherwise altered by virtue of this bankruptcy proceeding, other than through the express consent of the Claimant, through one of the modification procedures set forth above.  On March 6, 2015, the Court entered an Order Granting Motion for Relief from the Automatic Stay in Favor of CitiMortgage, Inc. [Latham ECF No. 140], which terminated the automatic stay with respect to the 713 Property, so that the Claimant an pursue its lawful *in rem* remedies as to such property.  The Claimant will retain its lien on the 713 Property during such time that Latham remains the owner of such property.  The Claimant will not be entitled to a Class LA-9 General Unsecured Claim, as its claim will be deemed fully-secured. Upon entry of Latham's discharge, she shall be discharged of any and all *in personam* liability with respect to this claim. |
| Class LA-3B – Secured Claim of Wells Fargo Bank, N.A. (second mortgage on homestead property) (Claim # L3)<br><br>**Total claim amount: $126,991.36 (secured = $0.00; unsecured = $126,991.36)** | Impaired | Class LA-3B, the Secured Claim of Wells Fargo Bank, N.A. (second mortgage on homestead property), is impaired by this Plan.  This claim was secured by the 713 Property. Pursuant to Court order [Latham ECF No. 124], this claim was reclassified as an allowed secured claim in the amount of $0.00, and as an allowed general unsecured claim in the amount of $126,991.36.  Accordingly, the Claimant's claim shall be paid as a Class LA-9 General Unsecured Claim. |
| Class LA-4 – Secured Claim of Bayview Loan Servicing, LLC (first mortgage on investment property) (Claim # L4)<br><br>**Total claim amount: $538,634.01 (secured = $50,000.00; unsecured = $488,434.01)** | Impaired | Class LA-4, the Secured Claim of Bayview Loan Servicing, LLC, as servicing agent for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2005-63 Mortgage Pass-Through Certificates, Series 2005-63 ("Bayview") (first mortgage on investment property), is impaired by this Plan.  This claim is secured by the real property located at 716 New York St, West Palm Beach, FL 33401-6601 (the "716 Property"), which is owned by Latham. Pursuant to Court order [Latham ECF No. 114], this claim was reclassified as an allowed secured claim in the amount of $50,000.00, and as an allowed unsecured claim for the balance.<br><br>The secured claim will be paid at the rate of 5.25% over 30 years (360 months), which will result in equal monthly principal and interest payments of $276.10, beginning on May 1, 2015, and continuing on the first day of every month thereafter.  Taxes and insurance shall not be escrowed and shall be the responsibility of Latham.  Latham shall name Bayview as the loss payee under any applicable property insurance policy(ies).<br><br>Latham shall also pay (and has paid) Bayview the sum of |

| | | |
|---|---|---|
| | | $1,656.60, payable as a lump sum on or before May 1, 2015, for retroactive adequate protection payment(s), which shall be credited to the amount of Bayview's secured claim (to principal and interest, accordingly), upon confirmation of this Plan.<br><br>Furthermore, to the extent that the Court determines that Bayview is entitled to an administrative claim, by virtue of any post-petition escrow advances for real estate taxes and/or insurance, such post-petition escrow advances shall be paid at the rate of 0% over 12 months from the Effective Date, in 12 equal monthly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every month, or upon such other terms as agreed to between Latham and Bayview.<br><br>Bayview will retain its lien on the subject property during the time that payments are made.  Payments shall be made to Bayview Loan Servicing, 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, FL 33146, or such other address provided by Bayview to the Debtor's counsel.  Latham agrees to comply with all of the default provisions set forth in the Court's Agreed Order Denying Motion for Relief from Stay Filed by Bayview Loan Servicing, LLC and Granting Adequate Protection [Latham ECF No. 156], in particular ¶¶ 9, 10 and 11.  The allowed undersecured claim, in the amount of $488,434.01, will be paid in accordance with Class LA-9 unsecured creditors below. |
| Class LA-5A – Secured Claim of Green Tree Servicing, LLC (first mortgage on investment property) (Claim # L10)<br><br>**Total claim amount: $242,579.51 (secured = $134,300.00; unsecured = $108,279.51)** | Impaired | Class LA-5A, the Secured Claim of Green Tree Servicing, LLC ("Green Tree") (first mortgage on investment property), is impaired by this Plan.  This claim is secured by the real property located at 718 New Jersey St, West Palm Beach, FL 33401-6644 (the "718 Property"), which is owned by Latham. Pursuant to Court order [Latham ECF No. 86], this claim was reclassified as an allowed secured claim in the amount of $134,300.00, and as an allowed unsecured claim for the balance.<br><br>The secured claim will be paid at the rate of 5.25% over 30 years (360 months), which will result in equal monthly principal and interest payments of $741.61, beginning on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every month thereafter. Taxes and insurance shall not be escrowed and shall be the responsibility of Latham.<br><br>Furthermore, to the extent that the Court determines that Green Tree is entitled to an administrative claim, by virtue of any post-petition escrow advances for real estate taxes and/or insurance, such post-petition escrow advances shall be paid at the rate of 5% over 60 months from the Effective Date, in 20 equal quarterly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter, or upon such other terms as agreed to between Latham and Green Tree. |

| | | |
|---|---|---|
| | | Green Tree will retain its lien on the subject property during the time that payments are made.  Payments shall be made to Green Tree Servicing, LLC, P.O. Box 0049, Palatine, IL 60055-0049, or such other address provided by Green Tree to the Debtor's counsel.  Latham agrees to comply with all of the default provisions set forth in the Court's Agreed Order Denying Motion for Relief from Stay Filed by Green Tree Servicing and Granting Adequate Protection [Latham ECF No. 137] (the "Green Tree Adequate Protection Order"), in particular ¶¶ 7, 8, 9 and 10.  Any adequate protection payments paid by Latham to Green Tree pursuant to the Green Tree Adequate Protection Order, through the date of confirmation of this Plan, shall be credited to the amount of Green Tree's secured claim (to principal and interest, accordingly), upon confirmation of this Plan.  The allowed undersecured claim, in the amount of $108,279.51, will be paid in accordance with Class LA-9 unsecured creditors below. |
| Class LA-5B – Secured Claim of Bank of America, N.A. (second mortgage on investment property) **Total claim amount: $27,500.00 (secured = $0.00; unsecured = $27,500.00)** | Impaired | Class LA-5B, the Secured Claim of Bank of America, N.A. (second mortgage on investment property), is impaired by this Plan.  This claim was secured by the 718 Property.  Pursuant to Court order [Latham ECF No. 86], this claim was reclassified as an allowed secured claim in the amount of $0.00, and as an allowed general unsecured claim in the amount of $27,500.00.  Accordingly, the Claimant's claim shall be paid as a Class LA-9 General Unsecured Claim. |
| Class LA-6A – Secured Claim of CitiMortgage, Inc. (first mortgage on investment property) (Claim # L6) **Total claim amount: $112,447.03 (secured = $112,447.03; unsecured = $0.00)** | Unimpaired | Class LA-6A, the Secured Claim of CitiMortgage, Inc. ("CitiMortgage") (first mortgage on investment property), is unimpaired by this Plan.  This claim is secured by the real property located at 734 New York St, West Palm Beach, FL 33401-6602 (the "734 Property"), which is owned by Latham. This claim is fully secured, as the 734 Property was valued by the Court at $115,412.00 [Latham ECF No. 87].  This claim will be paid pursuant to the note, mortgage and any other loan documents entered into between CitiMortgage and Latham, and will not be modified or otherwise altered by virtue of this bankruptcy proceeding, other than through the express consent of CitiMortgage.  The current monthly payment on account of this claim is $1,035.79 (including escrow).  Any arrearage amount shall be paid in full on the Effective Date of this Plan.  It is estimated that the arrearage amount is $1,035.79.  CitiMortgage will retain its lien on the 734 Property during such time that payments are being made.  The Claimant will not be entitled to a Class LA-9 General Unsecured Claim, as its claim is fully secured.  Upon entry of Latham's discharge, she shall be discharged of any and all *in personam* liability with respect to this claim. |
| Class LA-6B – | Impaired | Class LA-6B, the Secured Claim of Bessenroth Builders Inc. |

_____

Leiderman Shelomith, P.A., Attorneys at Law
2699 Stirling Road, Suite C401, Ft. Lauderdale, FL 33312 · Tel. (954) 920-5355 · Fax (954) 920-5371

| | | |
|---|---|---|
| Secured Claim of Bessenroth Builders Inc. (Claim of Lien(s) on investment property)<br><br>**Total claim amount: $3,157.41 (secured = $3,157.41; unsecured = $0.00)** | | ("BBI") (Claim of Lien(s) on investment property), is impaired by this Plan.  This claim is secured by the 734 Property. BBI's claim is based upon two Claims of Lien against the 734 Property, as follows: (1) Claim of Lien in the amount of $3,157.41 and recorded on September 11, 2013, in Book 26317, Page 1999, in the Public Records of Palm Beach County, Florida (the "First Claim of Lien"); and (2) Claim of Lien in the amount of $3,157.41 and recorded on May 12, 2014, in Book 26784, Page 1041, in the Public Records of Palm Beach County, Florida (the "Second Claim of Lien").<br><br>Latham will be filing an Objection to Claim as to both the First Claim of Lien and the Second Claim of Lien.  With respect to the First Claim of Lien, Latham alleges that the quality of the work performed should not result in any claim amount.  With respect to the Second Claim of Lien, Latham asserts that it is a duplicate of the First Claim of Lien.<br><br>Pursuant to Court order [Latham ECF No. 87], the Second Claim of Lien was reclassified as a secured claim in the amount of $287.59, and as an unsecured claim for the balance, without prejudice to the Debtor's potential Objection to Claim.<br><br>In the event that it is determined that the Claimant is entitled to an allowed secured claim, then the allowed amount of BBI's secured claim will be paid at the rate of 3% over 5 years (60 months), which will result in approximate equal monthly principal and interest payments of $56.75, beginning on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every month thereafter.<br><br>In such event, BBI will retain its lien on the 734 Property during the time that payments are made.  Any allowed undersecured claim shall be paid in accordance with Class LA-9 unsecured creditors below. |
| Class LA-7 – Secured Claim of Grandview Heights Citizens Association (homeowner's association fees on investment properties)<br><br>**Total claim amount: $0.00** | Unimpaired | Class LA-7, the Secured Claim of Grandview Heights Citizens Association (homeowner's association fees on investment properties), is unimpaired by this Plan.  To the extent any claim(s) exist(s), such claim(s) would be secured against the 713 Property, 716 Property, 718 Property and/or the 734 Property.  Latham does not believe that she is indebted to the Claimant for any pre-petition homeowner's association fees.  To the extent that any such claims exist, they will be paid in full on the Effective Date of the Plan. Latham shall remain obligated for any homeowner's association fees that arose post-petition. |
| Class LA-8 – Secured Claim of City of West Palm Beach, Florida (Various Liens on Real Property) (Claim # L11) | Impaired | Class LA-8, the Secured Claim of the City of West Palm Beach (the "City") (Various Liens on Real Property), is impaired by this Plan.  This claim was secured by all of the real properties owned by Latham, as set forth above. Pursuant to Court orders [Latham ECF Nos. 124, 114, 86 and 87], this claim was reclassified as a secured claim in the amount of $0.00, and as a general unsecured claim for the |

| | | |
|---|---|---|
| **Total claim amount: $216,000.00 (secured = $0.00; unsecured = $216,000.00)** | | balance. Notwithstanding the amounts referenced in Latham's and Willoughby's bankruptcy schedules, the actual amount of this claim is $216,000.00, as evidenced by Claim # L11. Accordingly, the Claimant's claim, in the amount of $216,000.00, will be paid in accordance with Class LA-9 unsecured creditors above, without prejudice to Latham filing an Objection to Claim as to the validity or amount of this claim, and/or without prejudice to Latham seeking to mitigate this claim through non-bankruptcy administrative procedure(s), and/or Latham seeking a determination of dischargeability pursuant to 11 U.S.C. § 523. Furthermore, Latham's treatment of the City by virtue of this Plan is not meant to impact its right to seek abatement of a chronic nuisance by demolition of the 716 Property. That is, the Agreed Order Granting Creditor City of West Palm Beach's Motion for Relief from the Automatic Stay [Latham ECF No. 166] shall remain in full force and effect. |
| Class LA-9 - General Unsecured Creditors of Latham<br><br>**Total general unsecured claims: $1,215,789.38** | Impaired | Class LA-9 consists of all allowed unsecured general claims, including undersecured claims, of Latham. (There are no separate general unsecured claims of Willoughby). The Class LA-9 Creditors shall share *pro rata* in a total distribution in the amount of $20,000.00 (the "Plan Payments"). The Class LA-9 Creditors will also share *pro rata* in any net proceeds derived from Causes of Action (as defined and described below).<br><br>Any allowed unsecured or undersecured general claimant scheduled to receive a total distribution of $500.00 or less shall be paid in a lump sum within sixty (60) days from the Effective Date. The Debtors estimate that the lump sum payment(s) will total $1,151.30.<br><br>Any allowed unsecured or undersecured general claimant scheduled to receive a total distribution of more than $500.00 shall receive payment over 5 years from the first day of the month following the Effective Date, in 20 monthly payments totaling $942.44 per payment, with the first payment due on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every quarter thereafter (the "Plan Period").<br><br>The specific creditors to be paid under this Plan (as well as a payment schedule) are set forth in the attached Exhibit "A". Unsecured creditors will be receiving a distribution of approximately 1.6450% of their allowed claim(s). |
| Class LA-10 - Equity Interest of Latham | Unimpaired | Class LA-10 consists of Latham's interest in property of her estate, which is retained under this Plan. Latham has committed the value of 5 years of her projected household net disposable income toward funding the Plan, and has otherwise met all of the requirements under the Bankruptcy Code. Class LA-10 is presumed to accept the Plan and not entitled to vote. |

## Claims and Interests in the Willoughby Case:

| Class | Impairment | Treatment |
|---|---|---|
| Class WB-1 – Priority Claims | Unimpaired | Other than set forth below (see Class WB-10), no priority claims have been scheduled by Willoughby and Willoughby does not believe that any other priority claims exist. However, in the event that it is determined by the Court that any additional priority claims do exist, then each holder of a Class WB-1 Priority Claim will be paid in full, over 60 months from the Effective Date, in 20 equal quarterly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter thereafter. |
| Class WB-2 – Secured Real Estate Tax Obligation(s) of Palm Beach County Tax Collector and/or tax certificate holders on 428 Property (Claim # W9 and W1)<br><br>**Total claim amount: $28,159.02 (secured = $28,159.02; unsecured = $0.00)** | Unimpaired | Class WB-2, the Secured Real Estate Tax Obligation(s) of Palm Beach County Tax Collector and/or tax certificate holders on 428 Property, is unimpaired by this Plan.  These claim(s) are secured by the real property located at 428 Avon Rd, West Palm Beach, FL 33401-7904 (Folio # 74-43-43-28-07-000-1480) (the "428 Property") (first priority lien), which is owned by Willoughby, and are comprised of the following claims:<br><br>a.  Palm Beach County Tax Collector (2014 Real Estate Taxes) ($5,390.01) (Claim # W9); and<br><br>b.  Cap One as Coll Assn RMCTL2013 (Various Years' Real Estate Taxes) (Tax Certificate # 2012-29301) ($22,761.01) (referenced in Claim # W1).<br><br>The Claimants will be paid in full, plus statutory interest, over 60 months from the Effective Date, in 20 equal quarterly payments aggregating approximately $2,145.15 each, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter thereafter.  Furthermore, Willoughby agrees to remain current with any and all real estate taxes owing to the Claimant(s) after the Effective Date.  The Claimant(s) will retain their lien(s) on the 428 Property until all payments are made. |
| Class WB-3 – Secured Real Estate Tax Obligation(s) of Palm Beach County Tax Collector and/or tax certificate holders on 429 Property (Claim # W1 and W10)<br><br>**Total claim amount: $26,563.20 (secured = $26,563.20; unsecured = $0.00)** | Unimpaired | Class WB-3, the Secured Real Estate Tax Obligation(s) of Palm Beach County Tax Collector and/or tax certificate holders on 429 Property, is unimpaired by this Plan.  These claim(s) are secured by the real property located at 429 Belvedere Rd, West Palm Beach, FL 33405-1226 (Folio # 74-43-43-28-07-000-1760) (the "429 Property") (first priority lien), which is owned by Willoughby, and are comprised of the following claims:<br><br>a.  Palm Beach County Tax Collector (2014 Real Estate Taxes) ($6,637.68) (Claim # W10);<br><br>b.  U.S. Bank as Cust For Magnolia TC 14 NSA, LLC (2013 Real Estate Taxes) (Tax Certificate # 2014-27142) |

| | | |
|---|---|---|
| | | ($6,958.28) (5%) (Claim # W1); |
| | | c.  US Bank as Cust for Caz Creek (2012 Real Estate Taxes) (Tax Certificate # 2013-28367) ($6,456.00) (referenced in Claim # W1); and |
| | | d.  Beil Lien FL LLC Capone-CLTRLAS (2011 Real Estate Taxes) (Tax Certificate # 2013-155) ($6,511.24) (referenced in Claim # W1). |
| | | The Claimants will be paid in full, plus statutory interest, over 60 months from the Effective Date, in 20 equal quarterly payments aggregating $1,885.59 each, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter thereafter. Furthermore, Willoughby agrees to remain current with any and all real estate taxes owing to the Claimant(s) after the Effective Date.  The Claimant(s) will retain their lien(s) on the 429 Property until all payments are made. |
| Class WB-4 – Secured Claim of Realty Lender Corporation (first mortgage on 428 Property and 429 Property) (Claim # W4)<br><br>**Total claim amount: $516,850.54 (secured = $515,277.78; unsecured = $1,572.76)** | Impaired | Class WB-4, the Secured Claim of Realty Lending Corporation ("RLC") (first mortgage on 428 Property and 429 Property), is impaired by this Plan.  This claim (the "RLC Claim") is secured by the 428 Property and the 429 Property, which are owned by Willoughby.  RLC has a second priority mortgage lien on these real properties, subordinate only to the Real Estate Tax Claims referenced in Classes WB-2 and WB-3 above. |
| | | Pursuant to Court order [Willoughby ECF No. 126], the value of the 428 Property was deemed to be $210,000.00, for all purposes in the Willoughby Case.  Pursuant to Court order [Willoughby ECF No. 127], the value of the 429 Property was deemed to be $360,000.00, for all purposes in the Willoughby Case. |
| | | As such, the RLC Claim shall be reclassified as an allowed secured claim in the amount of $515,277.78 and as an allowed unsecured claim in the amount of $1,572.76.  The secured claim will be paid at the rate of 5% over 10 years (120 months), amortized over 30 years, which will result in equal monthly principal and interest payments of $2,766.12, beginning on July 18, 2015, and continuing on the 18th day of every month thereafter.  Thirty (30) days after the conclusion of the scheduled monthly payments (i.e. June 18, 2025), a balloon payment shall be due, in the approximate amount of $421,903.69.  Taxes and insurance shall not be escrowed and shall be the responsibility of Willoughby.  Willoughby will be responsible for procuring any and all required insurance, pursuant to the underlying loan documents, and shall provide proof of insurance to RLC within seven (7) days after confirmation of this Plan.  Willoughby is also responsible for paying for all of the Real Estate Tax Claims referenced in Classes WB-2 and WB-3 above. |
| | | Furthermore, to the extent that the Court determines that RLC is entitled to an administrative claim, by virtue of any post-petition escrow advances for real estate taxes and/or |

| | | |
|---|---|---|
| | | insurance, such post-petition escrow advances shall be paid at the rate of 5% over 60 months from the Effective Date, in 20 equal quarterly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter, or upon such other terms as agreed to between Latham and RLC. |
| | | RLC will retain its lien on the subject property during the time that payments are made, including its lien on rents and leases. Payments shall be made to Realty Lender Corporation, 18801 SE Mack Dairy Road, Jupiter, FL 33478-2149, or such other address provided by RLC to the Debtor's counsel. The allowed undersecured claim, in the amount of $1,572.76, will be paid in accordance with Class LA-9 unsecured creditors above (as the RLC Claim has been guaranteed by Latham). |
| Class WB-5 – Secured Real Estate Tax Obligation(s) of Palm Beach County Tax Collector and/or tax certificate holders on 1403 Property (Claim # W2 and W11) <br><br>**Total claim amount: $15,296.01 (secured = $15,296.01; unsecured = $0.00)** | Unimpaired | Class WB-5, the Secured Real Estate Tax Obligation(s) of Palm Beach County Tax Collector and/or tax certificate holders on 1403 Property, is unimpaired by this Plan. These claim(s) are secured by the real property located at 1403 Georgia Ave, West Palm Beach, FL 33401-6653 (Folio # 74-43-43-28-05-000-1051) (the "1403 Property") (first priority lien), which is owned by Willoughby, and are comprised of the following claims: <br><br> a. Palm Beach County Tax Collector (2014 Real Estate Taxes) ($4,553.60) (Claim # W11); <br><br> b. US Bank as Custodian for BroadRiver TRF I, L.P. (2013 Real Estate Taxes) (Tax Certificate # 2014-27100) ($3,807.12) (0.25%) (Claim # W2); <br><br> c. MTAX 6 (2012 Real Estate Taxes) (Tax Certificate # 2013-28315) ($3,426.92) (referenced in Claim # W1); and <br><br> d. MTAX 6 (2011 Real Estate Taxes) (Tax Certificate # 2013-152) ($3,508.37) (referenced in Claim # W1). <br><br> The Claimants will be paid in full, plus statutory interest, over 60 months from the Effective Date, in 20 equal quarterly payments aggregating $1,066.80 each, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter thereafter. Furthermore, Willoughby agrees to remain current with any and all real estate taxes owing to the Claimant(s) after the Effective Date. The Claimant(s) will retain their lien(s) on the 1403 Property until all payments are made. |
| Class WB-6 – Secured Claim of Foreclosure Advisors, LLC (first mortgage on investment property) (Claim # W5/L7) <br><br>**Total claim amount: $189,935.27 (secured = $189,935.27;** | Impaired | Class WB-6, the Secured Claim of Foreclosure Advisors, LLC ("Foreclosure Advisors") (first mortgage on investment property), is impaired by this Plan. This claim is secured by the 1403 Property, which is owned by Willoughby. This claim is fully secured [see Willoughby ECF No. 151]. <br><br> Foreclosure Advisors' secured claim will be paid at the rate of 5.25% over 30 years (360 months), which will result in equal monthly principal and interest payments of $1,048.83, beginning on the first day of the month following the Effective |

| | | |
|---|---|---|
| unsecured = $0.00) | | Date of this Plan, and continuing on the first day of every month thereafter.  Willoughby shall be responsible for any and all post-petition interest, fees (including reasonable attorney's fees) and costs, and such amount(s) shall be added to the principal amount of Foreclosure Advisors' secured claim, and the secured claim will be re-amortized accordingly, at the rate of 5.25% over 30 years (360 months), with any credit given for amounts already paid after the Effective Date of this Plan.  Furthermore, any adequate protection payments paid by Willoughby to Foreclosure Advisors during the pendency of the Willoughby Case, through the date of confirmation of this Plan, shall be credited to the amount of Foreclosure Advisors' secured claim (to principal and interest, accordingly), upon confirmation of this Plan.  Taxes and insurance shall not be escrowed and shall be the responsibility of Willoughby, unless otherwise agreed to by Willoughby and Foreclosure Advisors. |
| | | Furthermore, to the extent that the Court determines that Foreclosure Advisors is entitled to an administrative claim, by virtue of any post-petition escrow advances for real estate taxes and/or insurance (not including post-petition interest, fees and costs, as set forth above), such post-petition escrow advances shall be paid at the rate of 5% over 60 months from the Effective Date, in 20 equal quarterly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter, or upon such other terms as agreed to between Willoughby and Foreclosure Advisors. |
| | | Foreclosure Advisors will retain its lien on the subject property during the time that payments are made.  Payments shall be made to Foreclosure Advisors, LLC, 13196 Rolling Green Rd, Juno Beach, Florida 33408, or such other address provided by Foreclosure Advisors to Willoughby's counsel.  As Foreclosure Advisors is fully secured, it is not entitled to an unsecured claim in either the Latham Case or the Willoughby Case. |
| Class WB-7 – Secured Claim of Bayview Loan Servicing, LLC (first mortgage on investment property) (Claim # W3)  **Total claim amount: $182,501.50 (secured = $170,000.00; unsecured = $12,501.50)** | Impaired | Class WB-7, the Secured Claim of Bayview Loan Servicing, LLC ("Bayview") (first mortgage on investment property), is impaired by this Plan.  This claim is secured by the real property located at 714 New Jersey St, West Palm Beach, FL 33401-6657 (the "714 Property"), which is owned by Willoughby.  Pursuant to Court order [Willoughby ECF No. 138], this claim was reclassified as an allowed secured claim in the amount of $170,000.00, and as an allowed unsecured claim for the balance. |
| | | The secured claim will be paid at the rate of 5.25% over 20 years (240 months), which will result in equal monthly principal and interest payments of $1,145.54, beginning on May 1, 2015, and continuing on the first day of every month thereafter, with no balloon payment (fully amortized).  Taxes and insurance shall not be escrowed and shall be the responsibility of Willoughby.  Willoughby shall name Bayview |

| | | |
|---|---|---|
| | | as the loss payee under any applicable property insurance policy(ies).<br><br>Furthermore, to the extent that the Court determines that Bayview is entitled to an administrative claim, by virtue of any post-petition escrow advances for real estate taxes and/or insurance, such post-petition escrow advances shall be paid at the rate of 5.25% over 60 months from the Effective Date, in 60 equal monthly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every month, or upon such other terms as agreed to between Willoughby and Bayview. It is estimated that such post-petition escrow advances total $6,453.09 (consisting of hazard insurance of $2,772.33 and real estate taxes of $3,680.76) (see ECF No. 171 in the Willoughby Case).<br><br>Bayview will retain its lien on the subject property during the time that payments are made. Payments shall be made to M&T Bank, P.O. Box 1288, Attn: Payment Processing, Buffalo, NY 14240-1288, or such other address provided by Bayview to Willoughby's counsel. Willoughby agrees to comply with all of the default provisions set forth in the Court's Agreed Order Granting, in Part, Debtor's Motion to Value and Determine Secured Status of Liens on Real Property [Willoughby ECF No. 138], in particular ¶ 6. The allowed undersecured claim, in the amount of $12,501.50, will be paid in accordance with Class LA-9 unsecured creditors above (as Latham is personally liable for this claim). |
| Class WB-8 – Secured Claim of the City of West Palm Beach, Florida (Order Imposing Fine on investment property) (Claim # W7)<br><br>**Total claim amount: $10,950.00 (secured = $0.00; unsecured = $10,950.00)** | Impaired | Class WB-8, the Secured Claim of the City of West Palm Beach (the "City") (Order Imposing Fine on investment property), is impaired by this Plan. This claim was secured by the 714 Property, which is owned by Willoughby. Pursuant to Court order [Willoughby ECF No. 138], this claim was reclassified as a secured claim in the amount of $0.00, and as a general unsecured claim in the amount of $77,100.00. However, the actual amount of this claim is $10,950.00, as evidenced by Claim # W7. Accordingly, the Claimant's claim, in the amount of $10,950.00, will be paid in accordance with Class LA-9 unsecured creditors above (as Latham is also allegedly personally responsible for this claim – see Claim # W7), without prejudice to Willoughby filing an Objection to Claim as to the validity or amount of this claim, and/or without prejudice to Willoughby seeking to mitigate this claim through non-bankruptcy administrative procedure(s). |
| Class WB-9 – Secured Claim of EBC Asset Investment, Inc. (second mortgages/judgment liens on various real properties and judgment lien on | Impaired | Class WB-9, the Secured Claim of EBC Asset Investment, Inc. ("EBC") (second mortgages/judgment liens on various real properties and judgment lien on personal property), is impaired by this Plan. This claim was secured by all of the real properties owned by Lathan and by Willoughby (referenced in the classes above), by virtue of the recording of a certified copy of a Final Judgment against, among others, Latham and Willoughby, recorded on April 3, 2013, in |

| | | |
|---|---|---|
| personal property) (Claim # W6/L8)<br><br>**Total claim amount: $151,754.55 (secured = $28,764.01; unsecured = $122,990.54)** | | Book 25922, Page 0969, in the Public Records of Broward County, Florida (the "EBC Asset Investment Judgment Lien"). This claim was also secured by virtue of a second mortgage lien against the 1403 Property and the 714 Property (the "EBC Second Mortgage"). Finally, this claim was also secured by all of the personal property owned by Latham and by Willoughby (the "Personal Property"), by virtue of the filing of a Judgment Lien Certificate with the Florida Secretary of State on or around April 11, 2013 (Document # J130000685462) (the "Personal Property Lien"). |
| | | Pursuant to various Court orders [Latham ECF Nos. 124, 114, 86 and 87 and Willoughby ECF Nos. 126, 127, 151 and 138], as to the real properties owned by Latham and by Willoughby, EBC's claim was reclassified as an allowed secured claim in the amount of $0.00, and as an allowed unsecured claim for the balance. |
| | | However, the value of Latham's non-exempt personal property is $25,656.49 and the value of Willoughby's non-exempt personal property is $3,107.52.  As such, EBC's claim shall be reclassified as an allowed secured claim in the amount of $28,764.01 and as an allowed unsecured claim in the amount of $122,990.54.  EBC's claim shall be secured only against the personal property owned by Latham and by Willoughby.  The secured claim will be paid at the rate of 5% over 5 years (60 months), which will result in equal monthly principal and interest payments of $542.81, beginning on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every month thereafter. |
| | | EBC will retain its lien on the subject personal property during the time that payments are made.  Furthermore, this Plan shall only affect EBC's claim against the Debtors, and not against any third parties.  That is, no injunction is being sought as to EBC's claim(s) against third parties.  Payments shall be made to EBC Asset Investment, Inc., 22461 Shaw Rd, Sterling, VA 20166, or such other address provided by EBC to Willoughby's counsel.  The allowed undersecured claim, in the amount of $122,990.54, will be paid in accordance with Class LA-9 unsecured creditors above (as Latham is personally liable for this claim). |
| Class WB-10 – Unsecured Priority Claim of the State of Florida - Department of Revenue (Claim # W8)<br><br>**Total priority claim amount: $2,261.33** | Unimpaired | Class WB-10, the Unsecured Priority Claim of the State of Florida – Department of Revenue, in the amount of $2,261.33, is unimpaired by this Plan. The State of Florida – Department of Revenue will be paid in full (the full amount of its allowed unsecured priority claim, if any), plus statutory interest, over 60 months from the Effective Date, in equal monthly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every month thereafter. |
| Class WB-11 - Equity Security Holders of Willoughby | Impaired | Class WB-11 consists of all allowed equity interests in Willoughby, which includes the equity interest of Latham (100% shareholder).  Willoughby is canceling any and all |

| | | stock interest(s) in Willoughby, and reissuing such stock interest(s) solely to Latham in the Reorganized Debtor, in exchange for: (a) providing a new value payment in the amount of $5,000.00, to be used to pay administrative professional fees and any other claims of Willoughby as is appropriate; (b) funding any and all operational expenses of Willoughby during the Plan Period, if necessary; (c) providing capital infusions to meet cash flow needs; and (d) other good and valuable consideration. This new value payment shall come solely from family member(s) of Latham. Other than receiving a new Equity Interest in the Debtor, Latham shall not be entitled to receive any distribution under this Plan on account of such Equity Interest. Latham shall own a 100% interest in the Willoughby Reorganized Debtor upon the Effective Date. |
|---|---|---|

3.02   <u>Treatment Upon 11 U.S.C. § 1111(b) Election</u>.  Pursuant to 11 U.S.C. § 1111(b), certain secured creditors (and/or classes of creditors) have the right to elect that its/their claim(s) is a secured claim to the extent that such claim is allowed, notwithstanding 11 U.S.C. § 506 (the "§ 1111(b) Election").  Therefore, any secured creditor that has the right to make the § 1111(b) Election under applicable law and that timely makes the § 1111(b) Election (an "Electing Secured Creditor") shall not be entitled to any Class LA-9 General Unsecured Claim.  In that instance, the Electing Secured Creditor's proposed Class LA-9 General Unsecured Claim will be re-distributed to the other remaining Class LA-9 Claimholders, on a *pro rata* basis, throughout the Plan Period.  Such Electing Secured Creditor will also not be entitled to a vote on its Class LA-9 General Unsecured Claim.

Furthermore, with regard to the secured claim of any Electing Secured Creditor, such secured claim shall be paid pursuant to the monthly payment schedule set forth in ¶ 3.01 above.  However, any secured claim to be paid over 360 months (or such other time period as agreed to by the Debtors and the Electing Secured Creditor) will not be amortized based on the value of the underlying property.  Instead, such payments shall represent payments of principal only.  At the conclusion of 360 monthly payments (or such other time period as agreed to by the Debtors and the Electing Secured Creditor), a balloon payment for the remaining amount of the Electing Secured Creditor's allowed claim shall be payable by the appropriate Debtor, in full satisfaction of the Electing Secured Creditor's allowed claim.

3.03   <u>Default of Plan Payment(s)</u>.  Unless otherwise specifically set forth above, in the event of any default by the Debtors of any payment required by ¶ 3.01 above, the Claimant shall provide the Debtors with notice of such default, by electronic mail to the Debtors' counsel, Zach B. Shelomith, Esq. (at zshelomith@lslawfirm.net) and by facsimile transmittal (954-920-5371) (the "Default Notice").  The Debtors shall be afforded ten (10) days from the date of receipt by the Debtors' counsel of such Default Notice to cure such default.  The Claimant shall not take any further action(s) against the Debtors, including without limitation, proceeding against the Debtors in a court of competent jurisdiction, seeking *in rem* remedies against any of the subject properties described above or alleging a "material" default of this Plan by the Debtors, unless the cure period referenced herein has expired.

To the extent that any default by the Debtors (and failure to cure within the time frame referenced above) of any payment required by ¶ 3.01 above relates to a *secured* claim, then such Claimant's remedies are limited to any and all *in rem* remedies against the subject property (pursuant to the underlying loan documents), as long as the Debtors ultimately receive a discharge.   Should the Debtors not receive a discharge at the conclusion of the Plan Payments, then such remedies shall not be limited and shall include any *in personam* rights against the Debtors pursuant to the underlying loan documents. The Claimant can then proceed against the Debtor either in the Bankruptcy Court or any applicable non-Bankruptcy Court (including state court), as such courts have concurrent jurisdiction to enforce any default of the Plan.

To the extent that any default by the Debtors (and failure to cure within the time frame referenced above) of any payment required by ¶ 3.01 above relates to an *unsecured* claim, then such Claimant may pursue whatever remedies are available pursuant to the underlying contract(s) or agreement(s) between the Claimant and the Debtors or pursuant to applicable law.   The Claimant can then proceed against the Debtor either in the Bankruptcy Court or any applicable non-Bankruptcy Court (including state court), as such courts have concurrent jurisdiction to enforce any default of the Plan.   However, should the Debtors ultimately receive a discharge, then any such claims shall be discharged pursuant to the Bankruptcy Code.

## ARTICLE IV
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

4.01    <u>Disputed Claim</u>.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest have filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

4.02    <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

4.03    <u>Settlement of Disputed Claims</u>.   The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and in compliance with Fed. R. Bank. P. 9019.

## ARTICLE V
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.01    <u>Assumption of Executory Contracts and Unexpired Leases</u>.   The Debtors assume the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan, which consists of **ALL** unexpired leases for which the Debtors are a party:

| Debtor | Name of Lessee(s) | Property | Monthly Payment | Date Lease Expires |
|--------|-------------------|----------|-----------------|--------------------|
| Latham | Phil Stromenger and Peggy Stromenger | 718 Property (House) | $1,400.00 | 7/31/2015 |
| Latham | Beau Allen | 718 Property (Cottage) | $735.00 | 11/30/2015 |

| Latham | Jon Summers and Carly Summers | 734 Property (House) | $1,400.00 | 3/31/2016 |
|--------|-------------------------------|----------------------|-----------|-----------|
| Latham | Rick Mills | 734 Property (Cottage) | $850.00 | 7/31/2016 |
| Willoughby | Carrie Chalker | 1403 Property (# 1) | $825.00 | 7/31/2016 |
| Willoughby | Christy Forsythe | 1403 Property (# 2) | $850.00 | 6/30/2016 |
| Willoughby | Teresa Hilbig | 1403 Property (# 3) | $875.00 | 2/29/2016 |
| Willoughby | Margaret Swift | 1403 Property (# 4) | $850.00 | 11/30/2015 |
| Willoughby | Serin Leas and Rodman Leas | 714 Property (House) | $1,100.00 | 7/31/2015 |
| Willoughby | Rosemary Lacrone | 714 Property (# 2) | $740.00 | 7/31/2015 |
| Willoughby | Russell Glace | 428 Property | $2,500.00 | Month to Month |

    5.02    Rejection of Executory Contracts and Unexpired Leases.  Since the Debtors are assuming all unexpired leases as of the Effective Date of this Plan, there are no known executory contracts or unexpired leases that are being rejected.  Should the Debtors unknowingly be a party to any other executory contract or unexpired lease, then the Debtors will be conclusively deemed to have rejected all such executory contracts and/or unexpired leases upon the Effective Date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

    The means necessary for the execution of this Plan include the following sources: (1) family assistance from Latham's husband (approximate payments of $10,500.00 per month for 5 months, followed by payments of $1,500.00 per month for 28 months); (2) rental income from Latham's two (2) investment real properties: (a) the 718 Property (estimated rental income of $2,135.00 per month); and (b) the 734 Property (estimated rental income of $2,250.00 per month) (the 716 Property (estimated rental income of $1,000.00 per month); and (3) rental income from Willoughby's four (4) investment real properties: (a) the 428 Property and 429 Property (estimated combined rental income of $5,000.00 per month); (b) the 1403 Property (estimated rental income of $3,400.00 per month); and (c) the 714 Property (estimated rental income of $1,940.00 per month).  The Debtors' net income is described in detail in the Debtors' Joint First Amended Disclosure Statement (the "Disclosure Statement"), which is being circulated with this Plan.

    The Debtors shall, and believes they can, generate sufficient income to the amount necessary to enable them to make all payments due under the Plan.  Attached to the Disclosure Statement is a 5 year cash flow projection, demonstrating that the Plan Payments are feasible.

    To the extent that the Debtors wish to prepay any amounts due under the Plan from exempt assets or other third party sources, the Debtors reserve the right to do so without penalty and to seek the entry of final decree(s) closing these case(s).  The Debtors, as reorganized, will retain and will be re-vested in all property of each respective bankruptcy estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to this Plan and property transferred to Creditors of the Debtors pursuant to the expressed terms hereof.  The retained property shall be used by the Debtors in the ordinary course of their personal and business affairs,

as the case may be.  (Further details concerning the nature and scope of the Debtors' personal and business affairs may be found in the Joint Disclosure Statement which accompanies this Plan).

## ARTICLE VII
## GENERAL PROVISIONS

7.01    <u>Definitions and Rules of Construction</u>.    The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a)    *Allowed Secured Claim* - shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtors have an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under 11 U.S.C. § 553, but in any event only to the extent of the value, determined in accordance with 11 U.S.C. § 506(a), of the Claimant's interest in the Debtors' interest in the property or to the extent of the amount subject to such setoff as the case may be.

(b)    *Allowed Undersecured Claim* - shall mean the amount of a prepetition secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured.

(c)    *Allowed Unsecured Claim* - shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition(s) commencing these Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtors or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court, if any.

<u>Amount of Allowed General Unsecured Claims</u>.    The Debtors' scheduled undersecured and general unsecured claims are set forth in their Schedules D and F [ECF # 23 in the Willoughby Case and ECF # 30 in the Latham Case].  Attached hereto as Exhibit "A" is a list of all claims to be paid under this Plan, including the proposed distribution and proposed first dividend.   The aggregate amount of claims included in Class LA-9 is $1,215,789.38.

Based upon the distribution amount of $20,000.00, holders of allowed general unsecured claims will receive a distribution of 1.6450%.  This distribution is higher than what holders of allowed general unsecured claims would receive in a hypothetical Chapter 7, in which case the Debtors estimate that such claimants would receive a distribution of 0.00%.

<u>Liquidation analysis</u>.   This estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtors' non-exempt property.

Latham's real properties are undersecured and have no equity. Latham's non-exempt personal property is valued at $25,656.49, based on the values set forth in Latham's bankruptcy schedules. After deducting the EBC Personal Property Lien against these assets, Latham's non-exempt unencumbered personal property is valued at $0.00, before even taking into account estimated Chapter 11 administrative expenses and Chapter 7 administrative expenses. Therefore, it was calculated that unsecured creditors would receive a total of $0.00 if the Latham Case were converted to a Chapter 7 liquidation.

Willoughby's real properties are also undersecured and have no equity. Willoughby's personal property is valued at $3,107.25, based on the values set forth in Willoughby's bankruptcy schedules. After deducting estimated Chapter 11 administrative expenses and Chapter 7 administrative expenses, it was calculated that unsecured creditors would receive a total of $0.00 if the Willoughby Case were converted to a Chapter 7 liquidation.

A more detailed liquidation analysis is set forth in the Joint Disclosure Statement that accompanies this Plan.

Accordingly, creditors are receiving more by virtue of this Plan, then they would if the Debtors' cases were both Chapter 7 proceeding(s).

(d)     *Causes of Action* - shall be used in its broadest sense and shall include all causes of action of the Debtors and all causes of action which a Trustee would have if the proceedings were converted on the confirmation date to proceedings under Chapter 7 of the Code and a Trustee(s) were appointed. Causes of action shall include all rights or causes of action, whether legal or equitable, whether they arise under the Code or under other federal or state laws or under judicial decisions, whether or not they are the subject of presently pending litigation and whether they arise before or after the confirmation date, as well as rights belonging to the Debtors pursuant to 11 U.S.C. §§ 506, 510, 544, 545, 547, 548, 549 or 550.

(e)     *Claim* - shall mean any right to payment against the Debtors or right to an equitable remedy against the Debtors for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

7.02    Effective Date of Plan. The Effective Date of this Plan is the fifteenth (15th) business day following the date of the entry of the order of confirmation. However, if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03    Severability.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

_____

Leiderman Shelomith, P.A., Attorneys at Law
2699 Stirling Road, Suite C401, Ft. Lauderdale, FL 33312 · Tel. (954) 920-5355 · Fax (954) 920-5371

7.04    Binding Effect.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05    Captions.    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06    Controlling Effect.    Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.07    Notice to Class LA-9 General Unsecured Creditors.  Pursuant to 11 U.S.C. § 1129(a)(15), if you object to confirmation to the Plan, the value of the property to be distributed under the Plan shall not be less than Latham's projected disposable income (as defined in 11 U.S.C. § 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan (or during the period for which the Plan provides payments, whichever is longer).  Pursuant to the Plan, the value of the property to be distributed to Class LA-9 General Unsecured Creditors under the Plan ($20,000.00) is equal to Latham's projected disposable income to be received during the 5-year period beginning on the Effective Date.

## ARTICLE VIII
## DISCHARGE

8.01    Discharge of Latham.  Confirmation of this Plan does not discharge any debt of Latham provided for in this Plan until the Court grants a discharge to Latham on completion of all payments under this Plan, or as otherwise provided in 11 U.S.C. § 1141(d)(5).  Latham will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523, except as provided in Fed. R. Bankr. P. Rule 4007(c).

8.02    Discharge of Willoughby.  On the confirmation date of this Plan, Willoughby will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that Willoughby will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Fed. R. Bankr. P. 4007(c); or (iii) of a kind specified in § 1141(d)(6)(B).

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.01    Vesting of Assets.  Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the Estate shall vest in the Debtors free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

9.02    Binding Effect.  Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtors and their respective successors and assigns, whether or not the claim

of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

9.03    Injunction Against Interference with Plan.  Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

9.04    Other Effect(s) of Confirmation.  If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

# ARTICLE X
# OTHER PROVISIONS

10.01  Reservation of Rights Under Section 1129(b).  The Debtors expressly reserve the right, pursuant to 11 U.S.C. § 1129(b), to request the Court to confirm this Plan if all of the applicable requirements of 11 U.S.C. § 1129(a) have been met, other than those of 11 U.S.C. § 1129(a)(8).

10.02  Reservation of Right to Modify Plan Post-Confirmation.  Latham expressly reserves the right to request a modification of this Plan at any time, solely as to the Latham Case, after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.  Any such request to modify this Plan shall be noticed to all creditors and interested parties, and no modification shall be granted absent proper notice and hearing.

10.03  Reservation of Rights Under Sections 1141(d)(5) and 350(a) as to Latham Case.  Latham reserves the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payment under this Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns.  Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties.  If such request is granted, then upon the satisfaction of all payments required to be paid to Class LA-9 creditors, Latham may file a motion to reopen the Latham Case, pursuant to 11 U.S.C. § 350(b), and the Court may then grant Latham a discharge, pursuant to 11 U.S.C. § 1141(d)(5).  This paragraph only preserves Latham's right to seek the relief described above and does not conclusively grant such relief.  Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such time as it is requested by Latham after confirmation.

10.04  Disbursing Agent.  All distributions hereunder shall be made by the Debtors, or such other individual or entity designated by the Debtors at the Confirmation Hearing, as Disbursing Agent(s), on or after the Effective Date or as otherwise provided herein.  A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors.

10.05 <u>Post-Petition Interest on Claims</u>.   Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

10.06 <u>Delivery of Distributions and Undeliverable Distributions</u>.   Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court, or on the books and records of the Debtors or their agents, or in a letter of transmittal, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.  In the event that any distribution to any holder is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made.  Thereafter, the amount represented by such undeliverable distribution shall be donated by the Debtors to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida.  At such time, any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtors and their property.

10.07 <u>Sale of Real Properties</u>.  To the extent that either Debtor wishes to sell any of the real properties owned by the Debtors as of the Effective Date of this Plan prior to the entry of each Debtor's respective discharge(s), the Debtors shall provide notice to all creditors and interested parties, who shall have an opportunity to object to same and/or seek modification of this Plan pursuant to 11 U.S.C. § 1127.

10.08 <u>Time Bar to Cash Payments</u>.  Checks issued by the Debtors in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made to the Debtors by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be donated by the Debtors to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida.  At such time, any Claim in respect of such voided check shall be discharged and forever barred.

This First Amended Plan of Reorganization is dated September 4, 2015, and is hereby approved by the undersigned.

Penelope Latham, both individually, and as President of Willoughby & Associates, Inc.

Submitted by:

**Zach B. Shelomith, Esq.**
**Florida Bar No.: 0122548**
**Leiderman Shelomith, P.A.**
2699 Stirling Rd # C401
Ft. Lauderdale, FL 33312
Tel. No.: 954-920-5355
Fax No.: 954-920-5371
E-Mail: zshelomith@lslawfirm.net
*Counsel for the Debtors*

Penelope Latham/Willoughby & Associates, Inc.  - List of General Unsecured Creditors to be Paid Pursuant to Plan

**Class LA-9 Unsecured Creditors:**

| Case | Class | Claim # | Name of Creditor | Amount of Claim | Proposed Distribution | Initial Payment | Quarterly Payments | Comments/Description |
|------|-------|---------|------------------|-----------------|----------------------|-----------------|--------------------|----------------------|
| Latham | LA-9 | L2 | Wells Fargo Bank, N.A. | $40,195.74 | $661.23 | $0.00 | $33.06 | Guaranty on Obligation of Made In Russia, Inc. |
| Latham | LA-3B | L3 | Wells Fargo Bank, N.A. | $126,991.36 | $2,089.04 | $0.00 | $104.45 | Wholly unsecured second mortgage on 713 New York St |
| Latham | LA-4 | L4 | Bayview Loan Servicing LLC | $488,434.01 | $8,034.85 | $0.00 | $401.74 | Unsecured portion of first mortgage on 716 New York St (Total Claim: $538,634.01) |
| Latham | LA-9 | L5 | San Antonio Federal Credit Union | $12,917.62 | $212.50 | $212.50 | $0.00 | Credit Card |
| Latham | LA-5A | L10 | Green Tree Servicing LLC | $108,279.51 | $1,781.22 | $0.00 | $89.06 | Unsecured portion of first mortgage on 718 New Jersey St (Total Claim: $242,579.51) |
| Latham | LA-8 | L11 | City of West Palm Beach, Florida | $216,000.00 | $3,553.25 | $0.00 | $177.66 | Order Imposing Fine |
| Latham | LA-5B | SCH - L | Bank of America, N.A. | $27,500.00 | $452.38 | $452.38 | $0.00 | Wholly unsecured second mortgage on 718 New Jersey St |
| Latham | LA-9 | SCH - L | Chase Bank USA, N.A. | $4,370.00 | $71.89 | $71.89 | $0.00 | Credit Card |
| Latham | LA-9 | SCH - L | General Electric Capital Retail Bank | $175.00 | $2.88 | $2.88 | $0.00 | Credit Card |
| Latham | LA-9 | SCH - L | USAA Savings Bank | $42,911.34 | $705.90 | $0.00 | $35.30 | Credit Card |
| Will | WB-7 | W3 | Bayview Loan Servicing, LLC | $12,501.50 | $205.65 | $205.65 | $0.00 | Unsecured portion of first mortgage on 714 New Jersey St (Total Claim: $182,501.50) |
| Will | WB-4 | W4 | Realty Lender Corporation | $1,572.76 | $25.87 | $25.87 | $0.00 | Unsecured portion of first mortgage on 428 Avon Rd and 429 Belvedere Rd (Total Claim: $516,850.54) |
| Will | WB-9 | W6/L8 | EBC Asset Investment, Inc. | $122,990.54 | $2,023.22 | $0.00 | $101.16 | Unsecured portion of second mortgages/judgment liens on various properties (Total Claim: $151,754.55) |
| Will | WB-8 | W7 | City of West Palm Beach, Florida | $10,950.00 | $180.13 | $180.13 | $0.00 | Wholly unsecured Order Imposing Fine on 714 New Jersey St |
| | | | **Total Undisputed Unsecured Claims** | **$1,215,789.38** | **$20,000.00** | **$1,151.30** | **$942.44** | |
| | | | **Distribution Percentage** | | **1.6450%** | | | |

**Disposition of Other Claims Not Listed Above:**

| Class | Claim # | Name of Creditor | Amount of Claim | Proposed Disposition |
|-------|---------|------------------|-----------------|----------------------|
| LA-1 | L1 | Internal Revenue Service | $100.00 | Unsecured priority creditor treated in Class LA-1 - payment in Plan (2013 federal income tax) |
| LA-3A | L9 | CitiMortgage, Inc. | $510,032.83 | Secured creditor treated in Class LA-3A - payments in Plan (713 New York St) |
| LA-4 | L4 | Bayview Loan Servicing LLC | $50,000.00 | Secured creditor treated in Class LA-4 - payments in Plan (716 New York St) |
| LA-5A | L10 | Green Tree Servicing LLC | $134,300.00 | Secured creditor treated in Class LA-5A - payments in Plan (718 New Jersey St) |
| LA-6A | L6 | CitiMortgage, Inc. | $112,447.03 | Secured creditor treated in Class LA-6A - payments in Plan (734 New York St) |
| LA-6B | SCH - L | Bessenroth Builders, Inc. | $3,157.41 | Secured creditor treated in Class LA-6B - payments in Plan (734 New York St) (First Claim of Lien) - Debtor will object to claim |
| LA-6B | SCH - L | Bessenroth Builders, Inc. | $3,157.41 | Debtor will file Objection to Claim as duplicate claim (Second Claim of Lien) |
| LA-7 | SCH - L | Grandview Heights Citizens Association | $0.00 | Secured creditor treated in Class LA-7 (current homeowner's association fees) (all Latham properties) |
| WB-2 | W9 | Palm Beach County Tax Collector | $5,390.01 | 428 Avon Rd (2014 Real Estate Taxes) |
| WB-2 | TAX | Cap One as Coll Assn RMCTL2013 | $22,769.01 | Tax Cert # 2012-29301 (Folio # 1480) (428 Avon Rd) (Various Years) |
| WB-3 | W10 | Palm Beach County Tax Collector | $6,637.68 | 429 Belvedere Rd (2014 Real Estate Taxes) |
| WB-3 | W1 | U.S. Bank as Cust For Magnolia TC 14 NSA, LLC | $6,958.28 | Tax Cert # 2014-27142 (Folio # 1760) (429 Belvedere Rd) (2013 Real Estate Taxes) |
| WB-3 | TAX | US Bank as Cust for Caz Creek | $6,456.00 | Tax Cert # 2013-28367 (Folio # 1760) (429 Belvedere Rd) (2012 Real Estate Taxes) |
| WB-3 | TAX | Beil Lien FL LLC Capone-CLTRLAS | $6,511.24 | Tax Cert # 2013-155 (Folio # 1760) (429 Belvedere Rd) (2011 Real Estate Taxes) |
| WB-4 | W4 | Realty Lender Corporation | $515,277.78 | Secured creditor treated in Class WB-4 - payments in Plan (428 Avon Rd and 429 Belvedere Rd) |
| WB-5 | W11 | Palm Beach County Tax Collector | $4,553.60 | 1403 Georgia Ave (2014 Real Estate Taxes) |
| WB-5 | W2 | US Bank as Custodian for BroadRiver TRF I, L.P. | $3,807.12 | Tax Cert # 2014-27100 (Folio # 1051) (1403 Georgia Ave) (2013 Real Estate Taxes) |
| WB-5 | TAX | MTAX 6 | $3,426.92 | Tax Cert # 2013-28315 (Folio # 1051) (1403 Georgia Ave) (2012 Real Estate Taxes) |
| WB-5 | TAX | MTAX 6 | $3,508.37 | Tax Cert # 2013-152 (Folio # 1051) (1403 Georgia Ave) (2011 Real Estate Taxes) |
| WB-6 | W5/L7 | Foreclosure Advisors, LLC | $189,935.27 | Secured creditor treated in Class WB-6 - payments in Plan (1403 Georgia Ave) |
| N/A | W12 | Palm Beach County Tax Collector | $0.00 | 714 New Jersey St (2014 Real Estate Taxes) - Claim Withdrawn |
| WB-7 | W3 | Bayview Loan Servicing, LLC | $170,000.00 | Secured creditor treated in Class WB-7 - payments in Plan (714 New Jersey St) |
| WB-9 | W6/L8 | EBC Asset Investment, Inc. | $28,764.01 | Secured creditor treated in Class WB-9 - payments in Plan (Various Properties) |
| WB-10 | W8 | State of Florida - Department of Revenue | $2,261.33 | Unsecured priority creditor treated in Class WB-10 - payment in Plan (Documentary Stamp Tax) |

Exhibit "A"