UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                               Case No. 14-26776-BKC-EPK

PENELOPE LATHAM,                                     Chapter 11

    Debtor.
_____/

**DEBTOR'S MOTION TO APPROVE SALE OF REAL PROPERTY, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AUTHORIZE DEBTOR TO ENTER INTO CONTRACT FOR SALE OF REAL PROPERTY AND APPROVE PAYMENT OF COMMISSION TO BROKER FROM CLOSING PROCEEDS**

Penelope Latham (the "Debtor"), by undersigned counsel, pursuant to 11 U.S.C. §§ 105, 363(b) and (f), Fed. R. Bankr. P. 6004 and Local Rule 6004-1, requests the Court enter an order approving the sale of certain real property described below, free and clear of liens, claims and encumbrances (except as specifically set forth below), authorizing the Debtor to enter into a contract for the sale of real property, and approving the payment of commission to the participating broker(s) associated with the contemplated transaction from the closing proceeds, and in support thereof states as follows:

1.    On July 25, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

**Factual Background**

2.    On September 4, 2015, the Debtor filed her Joint First Amended Plan of Reorganization of Willoughby & Associates, Inc. and Penelope Latham [ECF No. 185] (the "Plan").

3.    On October 29, 2015, the Court entered an Order Confirming Joint First Amended Plan of Reorganization of Willoughby & Associates, Inc. and Penelope Latham and Setting Bar Date for Lease and Executory Contract Rejection Claims and Administrative Claims [ECF No. 211] (the "Confirmation Order").

4.    The Plan provided for, *inter alia*, the Debtor's retention of three (3) investment

---

real properties located in the South Florida area (the "Investment Properties")[1], after having reduced and/or modified the secured claim(s) on such Investment Properties.

5.  In addition to the Investment Properties, the Plan provided for the reduction and/or modification of certain secured claim(s) on other real properties owned by the Debtor and by her company, Willoughby & Associates, Inc.[2] These real properties, and a summary of the Plan treatment, are as follows:

| Property Address | Amount of Secured Claim | Payment Terms | Class in Plan |
|---|---|---|---|
| 713 New York St, West Palm Beach, FL 33401-6601 | $510,032.83 | First mortgage not modified (first mortgage on homestead property); second mortgage rendered unsecured | LA-3A and LA-3B |
| 716 New York St, West Palm Beach, FL 33401-6601 | $50,000.00[3] | 5.25% over 30 years from 5/1/2015 | LA-4 |
| 718 New York St, West Palm Beach, FL 33401-6644 | $134,000.00 | 5.25% over 30 years from 12/1/2015; second mortgage rendered unsecured | LA-5A and LA-5B |
| 734 New York St, West Palm Beach, FL 33401-6602 | $112,447.03 | First mortgage not modified (fully secured claim); claims of lien rendered unsecured/objection to claim | LA-6A and LA-6B |
| 428 Avon Rd, West Palm Beach, FL 33401-7904 and 429 Belvedere Rd, West Palm Beach, FL 33405-1226[4] | $516,850.54 | 5% over 10 years from 7/18/2015 | WB-4, WB-2 and WB-3[5] |

---

[1] Located at 716 New York St, West Palm Beach, FL 33401-6601, 718 New York St, West Palm Beach, FL 33401-6644 and 734 New York St, West Palm Beach, FL 33401-6602.

[2] Willoughby & Associates, Inc. ("Willoughby") was also a Chapter 11 debtor before this Court, in Case No. 14-26774-BKC-EPK (the "Willoughby Bankruptcy Case"), and the Plan was a joint plan that included Willoughby. An Amended Confirmation Order was entered in the Willoughby Bankruptcy Case [Willoughby ECF No. 203] on November 13, 2015 and a Final Decree was entered in the Willoughby Bankruptcy Case on December 1, 2016 [Willoughby ECF No. 230].

[3] The Plan also provided that certain secured claim(s) of the City of West Palm Beach, Florida and EBC Asset Investment, Inc. were relegated to unsecured status. See Classes LA-8 and WB-9 of the Plan.

[4] This real property is owned by Willoughby and the claims related thereto are not affected by this Motion. The Debtor is not seeking to modify any claims with respect to Willoughby. These properties are included for illustrative and contextual purposes only, since numerous creditors of Willoughby are also creditors of Latham, and will be receiving notice of this Motion.

[5] Classes WB-2 and WB-3 relate to secured real estate tax obligations owed by Willoughby with

| 1403 Georgia Ave, West Palm Beach, FL 33401-6653[4] | $189,935.27 | 5.25% over 30 years from 12/1/2015 (fully secured) | WB-6 and WB-5[6] |
|---|---|---|---|
| 714 New Jersey St, West Palm Beach, FL 33401-6657[4] | $170,000.00 | 5.25% over 20 years from 5/1/2015; City of West Palm Beach secured claim rendered unsecured | WB-7 and WB-8 |

6. The Plan also provided for payments to EBC Asset Investment, Inc. ("EBC") on account of its secured claim against non-exempt personal property owned by the Debtor and by Willoughby, in the amount of $28,764.01, paid at 5% over 5 years from 12/1/2015[7]. See Class WB-9. The Debtor's (and Willoughby's) obligation to pay EBC the amounts set forth in the Plan, and EBC's rights upon default, are unaffected by this Motion.

7. Additionally, the Plan provided for payments to unsecured (and undersecured) creditors (as set forth in Class LA-9 of the Plan) in an aggregate amount of $20,000.00, to be paid over 5 years, in 20 quarterly payments totaling $942.44 per payment.

8. The Debtor has been making the above-referenced payments on a timely basis and remains in compliance with the provisions of the Plan and the Confirmation Order.

9. Since the date of the Confirmation Order, several of the Investment Properties have appreciated in value, including the real property located at 716 New York St, West Palm Beach, FL 33401-6601 (the "716 Property"). As such, the Debtor desires to sell the 716 Property and pay the allowed secured claim(s) on the 716 Property (as

---

respect to these real properties, which Willoughby is paying in the normal course as set forth by the Plan, and which are unaffected by this Motion.

[6] Class WB-5 relates to secured real estate tax obligations owed by Willoughby with respect to this real property, which Willoughby is paying in the normal course as set forth by the Plan, and which are unaffected by this Motion.

[7] Prior to the Petition Date, EBC held secured claims against the real properties owned by the Debtor and by Willoughby; however, during the course of this proceeding and pursuant to the Plan and Confirmation Order, such secured claims were relegated to unsecured status, leaving only the secured claim(s) against personal property owned by the Debtor and by Willoughby.

modified in the Plan) in full, as well as pay: (a) the balance(s) due to all administrative professional claimants who have obtained judgments against the Debtor's and Willoughby's real properties; (b) the balance(s) due to all administrative professional claimants whose claims arose post-confirmation; and (c) the balance(s) due to Class LA-9 General Unsecured Creditors and the Class WB-10 Unsecured Priority Creditor[8].

10. After payment of the balance(s) due to Classes LA-9 and WB-10 Creditors, the Debtor will seek the entry of her discharge, pursuant to the Confirmation Order[9].

## Proposed Sale of Investment Real Property

11. The subject of this motion is the 716 Property. The 716 Property is currently vacant land, as the building(s) located at the 716 Property, as of the Petition Date, have been demolished by the City of West Palm Beach, Florida (the "City"), as they were determined to be a chronic nuisance. The City was afforded relief from the automatic stay in order to proceed with such demolition.

12. The Debtor has received an offer to purchase the 716 Property from Spencer Blank (the "Purchaser"), in the amount of $241,780.60 (the "Purchase Price"). Pursuant to Class LA-4 of the Plan, the allowed secured claim against the Property was $50,000.00, which has been subsequently reduced by the Debtor's payments on account of such secured claim since May 1, 2015. A true and correct copy of the Vacant Land Contract is attached hereto as Exhibit "A".

13. Pursuant to the Plan, there are no other liens or encumbrances against the Property, except for real estate taxes (and potentially homeowner association fees), which would be paid in full upon the closing of the sale of the Property to the Purchaser.

---

[8] This claim is an unsecured priority claim owed to the State of Florida Department of Revenue, in the amount of $2,261.33 and will be paid at the closing of the sale of the 716 Property. The Debtor has already paid the creditor in Classes LA-1.

[9] The Debtor is contemporaneously filing a Motion to Modify the Plan, so that the Plan can be modified to allow for the sale of the 716 Property and the payment of the claims referenced above.

14. Specifically, prior to the Petition Date, the City had a secured claim against the 716 Property (and other real properties owned by the Debtor), by virtue of various liens against such real properties. However, pursuant to Court orders [ECF Nos. 124, 114, 86 and 87], as well as the Plan and the Confirmation Order, the City's secured claim(s) were reclassified solely as a general unsecured claim(s). Accordingly, the City will not be receiving any distribution upon the sale of the 716 Property, except pursuant to its Class LA-9 General Unsecured Claim.

15. Similarly, as set forth above, EBC had a secured claim against the 716 Property (and other real properties owned by the Debtor and by Willoughby). However, pursuant to Court orders [ECF Nos. 124, 114, 86 and 87], as well as the Plan and the Confirmation Order, EBC's secured claim(s) against these real properties were reclassified solely as a general unsecured claim(s). Accordingly, EBC will not be receiving any distribution upon the sale of the 716 Property, except pursuant to its Class LA-9 General Unsecured Claim[10].

16. The Purchaser is not an insider of the Debtor and the proposed sale of the Property would be an arms-length transaction.

17. The Debtor has conducted research regarding the value of the Property and believes that the Purchase Price is well in line with current market prices for similar properties in the area.

18. Therefore, the Debtor believes that it would be in the best interest of the Debtor's creditors to accept the above-referenced offer.

19. The Debtor proposes that the proceeds of the sale of the Property would pay the allowed secured claim of Bayview Loan Servicing, LLC, as servicing agent for The Bank

---

[10] As set forth above, EBC's allowed secured claim against personal property owned by the Debtor and by Willoughby shall remain in full force and effect, and the Debtor shall continue to make the contemplated payments to EBC, as set forth in the Plan and the Confirmation Order, and such obligation(s) shall not be affected by virtue of this Motion.

_____

of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2005-63 Mortgage Pass-Through Certificates, Series 2005-63 ("Bayview") (Class LA-4) in full, along with: (a) payment of the balance(s) due to all administrative professional claimants who have obtained judgments against the Debtor's and Willoughby's real properties[11]; (b) the balance(s) due to all administrative professional claimants whose claims arose post-confirmation[12]; and (c) the balance(s) due to Class LA-9 General Unsecured Creditors and the Class WB-10 Unsecured Priority Creditor. Any excess proceeds would be retained by the Debtor[13].

20.    The Debtor also proposes that any participating broker(s) associated with the contemplated sale be paid from the closing proceeds[14]. The contemplated commission to be paid by the Debtor is $9,671.22, from the closing proceeds (a total commission of 4%).

## Relief Requested

21.    The Debtor requests that the Court approve the sale of the Property to the Purchaser, pursuant to 11 U.S.C. § 363(f), free and clear of any and all liens, claims and encumbrances.

22.    11 U.S.C. § 363(b) provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

23.    Additionally, 11 U.S.C. § 363(f) permits the Debtor to "…sell property under

---

[11] Total amount of $86,729.81, plus interest, consisting of the principal amounts due to Leiderman Shelomith, P.A. in the above-referenced bankruptcy case ($43,695.05) [ECF No. 240] and the Willoughby Bankruptcy Case ($20,694.94) [Willoughby ECF No. 214] and to Dinnall Fyne & Company Inc. in the above-referenced bankruptcy case ($22,339.82) (or such other amount as agreed to by the administrative claimant) [ECF No. 243].

[12] Estimated to be approximately $10,000.00.

[13] Estimated to be approximately or less than $50,000.00.

[14] Although the Debtor proposes payment of a commission to a real estate broker, pursuant to the Confirmation Order, the Debtor was entitled to "retain and compensate professionals to assist her in carrying out her obligations as Reorganized Debtor without necessity of further approval of this Court". [See ¶ 8 of Confirmation Order]. The real estate broker is disinterested and has no connection to the Debtor or any of the creditors of this bankruptcy proceeding.

subsection (b) … of this section free and clear of any interest in such property of an entity other than the estate, only if –

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest".

24. Pursuant to the Confirmation Order, the Property is not "property of the estate", as all property of the estate re-vested in the [Reorganized] Debtor. However, in an abundance of caution, the Debtor seeks the approval of the sale of the Property, pursuant to 11 U.S.C. § 363, to the extent that such approval is necessary or required by the Purchaser or his agents.

25. The Purchase Price for the Property is greater than the aggregate value of all allowed secured claim(s) against the Property, as set forth in the Plan and Confirmation Order.

26. For all of the above reasons, the Court should authorize the sale of the Property, free and clear of any and all liens, claims and encumbrances.

27. Furthermore, the Debtor requests that at closing, the Purchaser be deemed to be a good faith purchaser within the meaning of 11 U.S.C. § 363(m), provided that the Purchaser has complied with all requirements of the Contract.

28. The proposed sale is not subject to higher and better offers.

29. The Debtor believes that the sale of the Property to the Purchaser is in the best interest of the Debtor's creditors.

WHEREFORE, the Debtor respectfully requests the Court enter an order approving the sale of the Property to the Purchaser, free and clear of any and all liens, claims and

_____
Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

encumbrances, authorizing the Debtor to enter into the Vacant Land Contract, approving the payment of commission to any participating broker(s) associated with the contemplated sale, and for such other and further relief as the Court deems just and proper.

Dated:  November 29, 2017.

LEIDERMAN SHELOMITH ALEXANDER
+ SOMODEVILLA, PLLC
Attorneys for the Debtor
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

By:_____/s/_____
ZACH B. SHELOMITH
Florida Bar No. 0122548
zbs@lsaslaw.com

**FloridaRealtors**

**Vacant Land Contract**

1\* 1. **Sale and Purchase:** _____LATHAM PENELOPE_____ ("**Seller**")
2\* and _____SPENCER BLANK_____ ("**Buyer**")
3 (the "parties") agree to sell and buy on the terms and conditions specified below the property ("Property")
4 described as:
5\* Address: _____716 New York Street, West Palm Beach, FL 33401_____
6\* Legal Description: GRANDVIEW HEIGHTS LTS 198 & 199
7
8
9
10
11\* SEC ___/TWP ___/RNG ___ of _____ County, Florida. Real Property ID No.: 74-43-43-28-05-000-1980
12\* including all improvements existing on the Property and the following additional property: _____
13

14\* 2. **Purchase Price:** (U.S. currency) .................................................................................... $ 241,780.60
15 All deposits will be made payable to "Escrow Agent" named below and held in escrow by:
16\* Escrow Agent's Name: _____Resource Real Estate Services_____
17\* Escrow Agent's Contact Person: _____Tina Shipton_____
18\* Escrow Agent's Address: _____17320 Loch Lomond Way Boca Raton FL 33496_____
19\* Escrow Agent's Phone: _____443-394-0184_____
20\* Escrow Agent's Email: _____tina@rttitle.com_____

21 (a) Initial deposit ($0 if left blank) (**Check if applicable**)
22\* ☒ accompanies offer
23\* ☐ will be delivered to Escrow Agent within _____ days (3 days if left blank)
24\* after Effective Date .................................................................................................. $ 10,000.00
25 (b) Additional deposit will be delivered to Escrow Agent (**Check if applicable**)
26\* ☐ within _____ days (10 days if left blank) after Effective Date
27\* ☐ within _____ days (3 days if left blank) after expiration of Feasibility Study Period ....... $ _____
28\* (c) Total Financing (see Paragraph 5) (express as a dollar amount or percentage) ................. _____
29\* (d) Other: _____ ............ $ _____
30 (e) Balance to close (not including **Buyer's** closing costs, prepaid items, and prorations)
31\* to be paid at closing by wire transfer or other Collected funds ............................................ $ 231,780.60

32\* (f) ☐ (Complete only if purchase price will be determined based on a per unit cost instead of a fixed price.) The
33\* unit used to determine the purchase price is ☐ lot ☐ acre ☐ square foot ☐ other (specify): _____
34\* prorating areas of less than a full unit. The purchase price will be $_____ per unit based on a
35 calculation of total area of the Property as certified to **Seller** and **Buyer** by a Florida licensed surveyor in
36 accordance with Paragraph 7(c). The following rights of way and other areas will be excluded from the
37\* calculation: _____

38 3. **Time for Acceptance; Effective Date:** Unless this offer is signed by **Seller** and **Buyer** and an executed copy
39\* delivered to all parties on or before _____November 17, 2017_____, this offer will be withdrawn and **Buyer's** deposit, if
40 any, will be returned. The time for acceptance of any counter offer will be 3 days after the date the counter offer is
41 delivered. **The "Effective Date" of this contract is the date on which the last one of the Seller and Buyer**
42 **has signed or initialed and delivered this offer or the final counter offer.**

43\* 4. **Closing Date:** This transaction will close on _____January 31, 2018_____ ("Closing Date"), unless specifically
44 extended by other provisions of this contract. The Closing Date will prevail over all other time periods including,
45 but not limited to, Financing and Feasibility Study periods. However, if the Closing Date occurs on a Saturday,
46 Sunday, or national legal holiday, it will extend to 5:00 p.m. (where the Property is located) of the next business
47 day. In the event insurance underwriting is suspended on Closing Date and **Buyer** is unable to obtain property
48 insurance, **Buyer** may postpone closing for up to 5 days after the insurance underwriting suspension is lifted. If
49 this transaction does not close for any reason, **Buyer** will immediately return all **Seller** provided documents and
50 other items.

Buyer (*SB*) (____) and Seller (*pL*) (____) acknowledge receipt of a copy of this page, which is 1 of 7 pages.
VAC-11 Rev 6/17 ©2017 Florida Realtors®

Serial#: 071893-000151-0854046

formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 1729cb32-3368-4b5e-939f-ea54a5e49a93 ]

Exhibit "A"

5. **Financing:** (Check as applicable)
   (a) ☒ **Buyer** will pay cash for the Property with no financing contingency.
   (b) ☐ This contract is contingent on **Buyer** qualifying for and obtaining the commitment(s) or approval(s) specified below ("Financing") within _____ days after Effective Date (Closing Date or 30 days after Effective Date, whichever occurs first, if left blank) ("Financing Period"). **Buyer** will apply for Financing within _____ days after Effective Date (5 days if left blank) and will timely provide any and all credit, employment, financial, and other information required by the lender. If **Buyer**, after using diligence and good faith, cannot obtain the Financing within the Financing Period, either party may terminate this contract and **Buyer's** deposit(s) will be returned.
   
   (1) ☐ **New Financing: Buyer** will secure a commitment for new third party financing for $_____ or _____% of the purchase price at (**Check one**) ☐ a fixed rate not exceeding _____% ☐ an adjustable interest rate not exceeding _____% at origination (a fixed rate at the prevailing interest rate based on **Buyer's** creditworthiness if neither choice is selected). **Buyer** will keep **Seller** and **Broker** fully informed of the loan application status and progress and authorizes the lender or mortgage broker to disclose all such information to **Seller** and **Broker**.
   
   (2) ☐ **Seller Financing: Buyer** will execute a ☐ first ☐ second purchase money note and mortgage to **Seller** in the amount of $_____, bearing annual interest at _____% and payable as follows: _____
   The mortgage, note, and any security agreement will be in a form acceptable to **Seller** and will follow forms generally accepted in the county where the Property is located; will provide for a late payment fee and acceleration at the mortgagee's option if **Buyer** defaults; will give **Buyer** the right to prepay without penalty all or part of the principal at any time(s) with interest only to date of payment; will be due on conveyance or sale; will provide for release of contiguous parcels, if applicable; and will require **Buyer** to keep liability insurance on the Property, with **Seller** as additional named insured. **Buyer** authorizes **Seller** to obtain credit, employment, and other necessary information to determine creditworthiness for the financing. **Seller** will, within 10 days after Effective Date, give **Buyer** written notice of whether or not **Seller** will make the loan.
   
   (3) ☐ **Mortgage Assumption: Buyer** will take title subject to and assume and pay existing first mortgage to _____ LN#_____ in the approximate amount of $_____ currently payable at $_____ per month, including principal, interest, ☐ taxes and insurance, and having a ☐ fixed ☐ other (describe) _____ interest rate of _____% which ☐ will ☐ will not escalate upon assumption. Any variance in the mortgage will be adjusted in the balance due at closing with no adjustment to purchase price. **Buyer** will purchase **Seller's** escrow account dollar for dollar. If the interest rate upon transfer exceeds _____% or the assumption/transfer fee exceeds $_____, either party may elect to pay the excess, failing which this contract will terminate; and **Buyer's** deposit(s) will be returned. If the lender disapproves **Buyer**, this contract will terminate; and **Buyer's** deposit(s) will be returned.

6. **Assignability:** (Check one) **Buyer** ☐ may assign and thereby be released from any further liability under this contract, ☒ may assign but not be released from liability under this contract, or ☐ may not assign this contract.

7. **Title: Seller** has the legal capacity to and will convey marketable title to the Property by ☒ statutory warranty deed ☐ special warranty deed ☐ other (specify) _____, free of liens, easements, and encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants, restrictions, and public utility easements of record; existing zoning and governmental regulations; and (list any other matters to which title will be subject) _____, provided there exists at closing no violation of the foregoing.
   (a) **Title Evidence:** The party who pays for the owner's title insurance policy will select the closing agent and pay for the title search, including tax and lien search if performed, and all other fees charged by closing agent. **Seller** will deliver to **Buyer**, at
   (**Check one**) ☒ **Seller's** ☐ **Buyer's** expense and
   (**Check one**) ☒ within __10__ days after Effective Date ☐ at least __5__ days before Closing Date,
   (**Check one**)
   (1) ☒ a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by **Seller** at or before closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase price for fee simple title subject only to the exceptions stated above. If **Buyer** is paying for the owner's title insurance policy and **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date.

Buyer (*SB*) (____) and Seller (*pL*) (____) acknowledge receipt of a copy of this page, which is 2 of 7 pages.
VAC-11   Rev 6/17                                                                            ©2017 Florida Realtors®
Serial#: 071893-000151-0854046                                                               formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 1729cb32-3368-4b5e-939f-ea54a5e49a93 ]    Exhibit "A"

(2) ☐ an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm. However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or **Buyer's** closing agent together with copies of all documents recited in the prior policy and in the update. If such an abstract or prior policy is not available to **Seller**, then (1) above will be the title evidence.

(b) **Title Examination:** After receipt of the title evidence, **Buyer** will, within _____ days (10 days if left blank) but no later than Closing Date, deliver written notice to **Seller** of title defects. Title will be deemed acceptable to **Buyer** if (i) **Buyer** fails to deliver proper notice of defects or (ii) **Buyer** delivers proper written notice and **Seller** cures the defects within _____ days (30 days if left blank) ("Cure Period") after receipt of the notice. If the defects are cured within the Cure Period, closing will occur within 10 days after receipt by **Buyer** of notice of such cure. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be cured within the Cure Period. If the defects are not cured within the Cure Period, **Buyer** will have 10 days after receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this contract or accept title subject to existing defects and close the transaction without reduction in purchase price.

(c) **Survey:** **Buyer** may, at **Buyer's** expense, have the Property surveyed and must deliver written notice to **Seller**, within 5 days after receiving survey but not later than 5 days before Closing Date, of any encroachments on the Property, encroachments by the Property's improvements on other lands, or deed restriction or zoning violations. Any such encroachment or violation will be treated in the same manner as a title defect and **Seller's** and **Buyer's** obligations will be determined in accordance with Paragraph 7(b).

(d) **Ingress and Egress:** **Seller** warrants that the Property presently has ingress and egress.

8. **Property Condition:** **Seller** will deliver the Property to **Buyer** at closing in its present "as is" condition, with conditions resulting from **Buyer's** Inspections and casualty damage, if any, excepted. **Seller** will not engage in or permit any activity that would materially alter the Property's condition without the **Buyer's** prior written consent.

(a) **Inspections:** (Check (1) or (2))

(1) ☒ **Feasibility Study:** **Buyer** will, at **Buyer's** expense and within __10__ days (30 days if left blank) ("Feasibility Study Period") after Effective Date and in **Buyer's** sole and absolute discretion, determine whether the Property is suitable for **Buyer's** intended use. During the Feasibility Study Period, **Buyer** may conduct a Phase 1 environmental assessment and any other tests, analyses, surveys, and investigations ("Inspections") that **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural, and environmental properties; zoning and zoning restrictions; subdivision statutes; soil and grade; availability of access to public roads, water, and other utilities; consistency with local, state, and regional growth management plans; availability of permits, government approvals, and licenses; and other inspections that **Buyer** deems appropriate. If the Property must be rezoned, **Buyer** will obtain the rezoning from the appropriate government agencies. **Seller** will sign all documents **Buyer** is required to file in connection with development or rezoning approvals. **Seller** gives **Buyer**, its agents, contractors, and assigns, the right to enter the Property at any time during the Feasibility Study Period for the purpose of conducting Inspections, provided, however, that **Buyer**, its agents, contractors, and assigns enter the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from losses, damages, costs, claims, and expenses of any nature, including attorneys' fees, expenses, and liability incurred in application for rezoning or related proceedings, and from liability to any person, arising from the conduct of any and all Inspections or any work authorized by **Buyer**. **Buyer** will not engage in any activity that could result in a construction lien being filed against the Property without **Seller's** prior written consent. If this transaction does not close, **Buyer** will, at **Buyer's** expense, (i) repair all damages to the Property resulting from the Inspections and return the Property to the condition it was in before conducting the Inspections and (ii) release to **Seller** all reports and other work generated as a result of the Inspections.

Before expiration of the Feasibility Study Period, **Buyer** must deliver written notice to **Seller** of **Buyer's** determination of whether or not the Property is acceptable. **Buyer's** failure to comply with this notice requirement will constitute acceptance of the Property as suitable for **Buyer's** intended use in its "as is" condition. If the Property is unacceptable to **Buyer** and written notice of this fact is timely delivered to **Seller**, this contract will be deemed terminated, and **Buyer's** deposit(s) will be returned.

(2) ☐ **No Feasibility Study:** **Buyer** is satisfied that the Property is suitable for **Buyer's** purposes, including being satisfied that either public sewerage and water are available to the Property or the Property will be approved for the installation of a well and/or private sewerage disposal system and that existing zoning

Buyer (*SB*) (____) and Seller (*PL*) (____) acknowledge receipt of a copy of this page, which is 3 of 7 pages.
VAC-11 Rev 6/17                                                                                                              ©2017 Florida Realtors®

Serial#: 071893-000151-0854046

formsimplicity

Electronically Signed using eSignOnline™ [ Session ID : 1729cb32-3368-4b5e-939f-ea54a5e49a93 ]        Exhibit "A"

and other pertinent regulations and restrictions, such as subdivision or deed restrictions, concurrency, growth management, and environmental conditions, are acceptable to **Buyer**. This contract is not contingent on **Buyer** conducting any further investigations.

(b) **Government Regulations:** Changes in government regulations and levels of service which affect **Buyer's** intended use of the Property will not be grounds for terminating this contract if the Feasibility Study Period has expired or if Paragraph 8(a)(2) is selected.

(c) **Flood Zone: Buyer** is advised to verify by survey, with the lender, and with appropriate government agencies which flood zone the Property is in, whether flood insurance is required, and what restrictions apply to improving the Property and rebuilding in the event of casualty.

(d) **Coastal Construction Control Line ("CCCL"):** If any part of the Property lies seaward of the CCCL as defined in Section 161.053, Florida Statutes, **Seller** will provide **Buyer** with an affidavit or survey as required by law delineating the line's location on the Property, unless **Buyer** waives this requirement in writing. The Property being purchased may be subject to coastal erosion and to federal, state, or local regulations that govern coastal property, including delineation of the CCCL, rigid coastal protection structures, beach nourishment, and the protection of marine turtles. Additional information can be obtained from the Florida Department of Environmental Protection, including whether there are significant erosion conditions associated with the shore line of the Property being purchased.

☐ **Buyer** waives the right to receive a CCCL affidavit or survey.

9. **Closing Procedure; Costs:** Closing will take place in the county where the Property is located and may be conducted by mail or electronic means. If title insurance insures **Buyer** for title defects arising between the title binder effective date and recording of **Buyer's** deed, closing agent will disburse at closing the net sale proceeds to **Seller** (in local cashier's check if **Seller** requests in writing at least 5 days before closing) and brokerage fees to Broker as per Paragraph 19. In addition to other expenses provided in this contract, **Seller** and **Buyer** will pay the costs indicated below.

(a) **Seller Costs:**
Taxes on deed
Recording fees for documents needed to cure title
Title evidence (if applicable under Paragraph 7)
Other: _____

(b) **Buyer Costs:**
Taxes and recording fees on notes and mortgages
Recording fees on the deed and financing statements
Loan expenses
Title evidence (if applicable under Paragraph 7)
Lender's title policy at the simultaneous issue rate
Inspections
Survey
Insurance
Other: _____

(c) **Prorations:** The following items will be made current and prorated as of the day before Closing Date: real estate taxes (including special benefit tax liens imposed by a CDD), interest, bonds, assessments, leases, and other Property expenses and revenues. If taxes and assessments for the current year cannot be determined, the previous year's rates will be used with adjustment for any exemptions.

(d) **Special Assessment by Public Body:** Regarding special assessments imposed by a public body, **Seller** will pay (i) the full amount of liens that are certified, confirmed, and ratified before closing and (ii) the amount of the last estimate of the assessment if an improvement is substantially completed as of Effective Date but has not resulted in a lien before closing; and **Buyer** will pay all other amounts. If special assessments may be paid in installments, ☒ **Seller** ☐ **Buyer** (**Buyer** if left blank) will pay installments due after closing. If **Seller** is checked, **Seller** will pay the assessment in full before or at the time of closing. Public body does not include a Homeowners' or Condominium Association.

(e) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE **SELLER'S** CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT **BUYER** MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.

(f) **Foreign Investment in Real Property Tax Act ("FIRPTA"):** If **Seller** is a "foreign person" as defined by FIRPTA, **Seller** and **Buyer** will comply with FIRPTA, which may require **Seller** to provide additional cash at closing.

(g) **1031 Exchange:** If either **Seller** or **Buyer** wish to enter into a like-kind exchange (either simultaneously with closing or after) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party will cooperate in all reasonable respects to effectuate the Exchange including executing documents, provided, however, that the cooperating party will incur no liability or cost related to the Exchange and that the closing will not be contingent upon, extended, or delayed by the Exchange.

**10. Computation of Time:** Calendar days will be used when computing time periods, except time periods of 5 days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal holidays specified in 5 U.S.C. 6103(a). Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. (where the Property is located) of the next business day. **Time is of the essence in this contract.**

**11. Risk of Loss; Eminent Domain:** If any portion of the Property is materially damaged by casualty before closing or **Seller** negotiates with a governmental authority to transfer all or part of the Property in lieu of eminent domain proceedings or an eminent domain proceeding is initiated, **Seller** will promptly inform **Buyer**. Either party may terminate this contract by written notice to the other within 10 days after **Buyer's** receipt of **Seller's** notification, and **Buyer's** deposit(s) will be returned, failing which **Buyer** will close in accordance with this contract and receive all payments made by the governmental authority or insurance company, if any.

**12. Force Majeure:** **Seller** or **Buyer** will not be required to perform any obligation under this contract or be liable to each other for damages so long as the performance or non-performance of the obligation is delayed, caused, or prevented by an act of God or force majeure. An "act of God or "force majeure" is defined as hurricanes, earthquakes, floods, fire, unusual transportation delays, wars, insurrections, and any other cause not reasonably within the control of **Seller** or **Buyer** and which by the exercise of due diligence the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the act of God or force majeure is in place. However, in the event that such act of God or force majeure event continues beyond 30 days, either party may terminate this contract by delivering written notice to the other; and **Buyer's** deposit(s) will be returned.

**13. Notices:** All notices will be in writing and delivered to the parties and Broker by mail, personal delivery, or electronic means. **Buyer's failure to timely deliver written notice to Seller, when such notice is required by this contract, regarding any contingency will render that contingency null and void, and this contract will be construed as if the contingency did not exist. Any notice, document, or item delivered to or received by an attorney or licensee (including a transactions broker) representing a party will be as effective as if delivered to or received by that party.**

**14. Complete Agreement; Persons Bound:** This contract is the entire agreement between **Seller** and **Buyer**. **Except for brokerage agreements, no prior or present agreements will bind Seller, Buyer, or Broker unless incorporated into this contract.** Modifications of this contract will not be binding unless in writing, signed or initialed, and delivered by the party to be bound. Electronic signatures will be acceptable and binding. This contract, signatures, initials, documents referenced in this contract, counterparts, and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this contract prevail over preprinted terms. If any provision of this contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. **Seller** and **Buyer** will use diligence and good faith in performing all obligations under this contract. This contract will not be recorded in any public record. The terms "**Seller**," "**Buyer**," and "**Broker**" may be singular or plural. This contract is binding on the heirs, administrators, executors, personal representatives, and assigns, if permitted, of **Seller, Buyer,** and **Broker**.

**15. Default and Dispute Resolution:** This contract will be construed under Florida law. This Paragraph will survive closing or termination of this contract.

(a) **Seller Default:** If **Seller** fails, neglects, or refuses to perform **Seller's** obligations under this contract, **Buyer** may elect to receive a return of **Buyer's** deposit(s) without thereby waiving any action for damages resulting from **Seller's** breach and may seek to recover such damages or seek specific performance. **Seller** will also be liable for the full amount of the brokerage fee.

Buyer (*SB*) (____) and Seller (*pL*) (____) acknowledge receipt of a copy of this page, which is 5 of 7 pages.

VAC-11    Rev 6/17                                                                ©2017 Florida Realtors®

Serial#: 071893-000151-0854046

formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 1729cb32-3368-4b5e-939f-ea54a5e49a93 ]          Exhibit "A"

(b) **Buyer Default:** If **Buyer** fails, neglects, or refuses to perform **Buyer's** obligations under this contract, including payment of deposit(s), within the time(s) specified, **Seller** may elect to recover and retain the deposit(s), paid and agreed to be paid, for the account of **Seller** as agreed upon liquidated damages, consideration for execution of this contract, and in full settlement of any claims, whereupon **Seller** and **Buyer** will be relieved from all further obligations under this contract; or **Seller**, at **Seller's** option, may proceed in equity to enforce **Seller's** rights under this contract.

**16. Attorney's Fees; Costs:** In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. Escrow Agent; Closing Agent: Seller** and **Buyer** authorize Escrow Agent and closing agent (collectively "Agent") to receive, deposit, and hold funds and other items in escrow and, subject to Collection, disburse them upon proper authorization and in accordance with Florida law and the terms of this contract, including disbursing brokerage fees. "Collection" or "Collected" means any checks tendered or received have become actually and finally collected and deposited in the account of Agent. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this contract or gross negligence. If Agent interpleads the subject matter of the escrow, Agent will pay the filing fees and costs from the deposit and will recover reasonable attorneys' fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court costs in favor of the prevailing party.

**18. Professional Advice; Broker Liability:** Broker advises **Seller** and **Buyer** to verify all facts and representations that are important to them and to consult an appropriate professional for legal advice (for example, interpreting this contract, determining the effect of laws on the Property and this transaction, status of title, foreign investor reporting requirements, the effect of property lying partially or totally seaward of the CCCL, etc.) and for tax, property condition, environmental, and other specialized advice. **Buyer** acknowledges that Broker does not reside in the Property and that all representations (oral, written, or otherwise) by Broker are based on **Seller** representations or public records. **Buyer agrees to rely solely on Seller, professional inspectors, and government agencies for verification of the Property condition and facts that materially affect Property value. Seller** and **Buyer** respectively will pay all costs and expenses, including reasonable attorneys' fees at all levels, incurred by Broker and Broker's officers, directors, agents, and employees in connection with or arising from **Seller's** or **Buyer's** misstatement or failure to perform contractual obligations. **Seller** and **Buyer** hold harmless and release Broker and Broker's officers, directors, agents, and employees from all liability for loss or damage based on (i) **Seller's** or **Buyer's** misstatement or failure to perform contractual obligations; (ii) the use or display of listing data by third parties, including, but not limited to, photographs, images, graphics, video recordings, virtual tours, drawings, written descriptions, and remarks related to the Property; (iii) Broker's performance, at **Seller's** or **Buyer's** request, of any task beyond the scope of services regulated by Chapter 475, Florida Statutes, as amended, including Broker's referral, recommendation, or retention of any vendor; (iv) products or services provided by any vendor; and (v) expenses incurred by any vendor. **Seller** and **Buyer** each assume full responsibility for selecting and compensating their respective vendors. This Paragraph will not relieve Broker of statutory obligations. For purposes of this Paragraph, Broker will be treated as a party to this contract. This Paragraph will survive closing.

**19. Commercial Real Estate Sales Commission Lien Act:** If the Property is commercial real estate as defined by Section 475.701, Florida Statutes, the following disclosure will apply: The Florida Commercial Real Estate Sales Commission Lien Act provides that when a broker has earned a commission by performing licensed services under a brokerage agreement with you, the broker may claim a lien against your net sales proceeds for the broker's commission. The broker's lien rights under the act cannot be waived before the commission is earned.

**20. Brokers:** The brokers named below are collectively referred to as "Broker." **Instruction to closing agent: Seller** and **Buyer** direct closing agent to disburse at closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed funds. This Paragraph will not be used to modify any MLS or other offer of compensation made by **Seller** or **Seller's** Broker to **Buyer's** Broker.

(a) _____ True Blue Realty Inc _____ (**Seller's** Broker)
will be compensated by ☒ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify): _____

(b) _____ Abode Real Estate, LLC _____ (**Buyer's** Broker)
will be compensated by ☒ **Seller** ☐ **Buyer** ☐ both parties ☐ **Seller's** Broker pursuant to ☐ a MLS offer of compensation ☐ other (specify): _____ 3% of the purchase price _____

Buyer **SB** (___) (___) and Seller **pL** (___) (___) acknowledge receipt of a copy of this page, which is 6 of 7 pages.

VAC-11    Rev 6/17                                                                    ©2017 Florida Realtors®

Serial#: 071893-000151-0854046                                                         formsimplicity

Electronically Signed using eSignOnline™ [ Session ID : 1729cb32-3368-4b5e-939f-ea54a5e49a93 ]    Exhibit "A"

327* **21. Additional Terms:** Buyer may assign to LLC if the entity is in the Purchaser's name
328 Escrow will be held by Buyer's Escrow Agent - see attached escrow letter
329 Subject to Bankruptcy Court Approval
330
331
...
342

343 **COUNTER-OFFER/REJECTION**

344* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
345 deliver a copy of the acceptance to Seller).
346* ☐ Seller rejects Buyer's offer

347 **This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney before**
348 **signing.**

349* Buyer: *Spencer Blank*                                                                 Date: 11/16/2017
350* Print name: Spencer Blank
351* Buyer: _____                                                 Date: _____
352* Print name: _____
353 Buyer's address for purpose of notice:
354* Address: 1200 Clint Moore Rd Boca Raton FL 33487
355* Phone: 561-558-3132    Fax: _____    Email: spencerb@redcliffbuilders.com

356* Seller: LATHAM PENELOPE                                                                Date: 11/16/2017
357* Print name: _____
358* Seller: _____                                                Date: _____
359* Print name: _____
360 Seller's address for purpose of notice:
361* Address: _____
362* Phone: _____    Fax: _____    Email: _____

363* **Effective Date:** _____ **(The date on which the last party signed or initialed and delivered the**
364 **final offer or counter offer.)**

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Buyer (*SB*) (____) and Seller (*PL*) (____) acknowledge receipt of a copy of this page, which is 7 of 7 pages.
VAC-11  Rev 6/17                                                                                         ©2017 Florida Realtors®

Serial#: 071893-000151-0854046                                                                           formsimplicity

Electronically Signed using eSignOnline™[ Session ID : 1729cb32-3368-4b5e-939f-ea54a5e49a93 ]        Exhibit "A"

# Addendum to Contract

 Florida Realtors®

Addendum No. __1__ to the Contract with the Effective Date of __November 16, 2017__ between _____ PENELOPE LATHAM _____ (Seller)

and _____ 716 New York, LLC _____ (Buyer)

concerning the property described as: 716 NEW YORK ST, WEST PALM BEACH, FL 33401 _____

_____

(the "Contract"). Seller and Buyer make the following terms and conditions part of the Contract:

buyer and seller acknowledge the commission structure to be paid out, by the buyer, upon funding, as follows:
True Blue Realty, Inc. 1.5% of the purchase price
Adobe Real Estate, LLC 2.5% of the purchase price

Buyer: *Spencer Blank*                                                    Date: 11/28/2017
       as authorized signatory for 716 New York, LLC
Buyer: _____                                          Date: _____

Seller: *Penelope Latham*                                                Date: 11/28/2017
Seller: _____                                         Date: _____

ACSP-4   Rev 6/17                                                        ©2017 Florida Realtors®
Serial#: 089738-800151-1871628                      Exhibit "A"                     formsimplicity

Electronically Signed using eSignOnline™[ Session ID : bfc7b33c-e5df-4538-bfd7-ecf50621b309 ]